**TOPIC et al., Appellees,**

v.

**CIRCLE REALTY et al., Appellants.**

**No. 74–2147.**

United States Court of Appeals,
Ninth Circuit.

March 23, 1976.

Carl B. Pearlston, Jr. (argued), Redondo Beach, Cal., for appellants.

Lowell Johnston (argued), San Francisco, Cal., for appellees.

## OPINION

Before CHAMBERS, TRASK and KENNEDY, Circuit Judges.

ANTHONY M. KENNEDY, Circuit Judge:

This is an interlocutory appeal from the district court's refusal to dismiss actions to enjoin three Los Angeles real estate brokers from alleged violations of the Fair Housing Act of 1968, 42 U.S.C. § 3604, and the Civil Rights Act of 1866, 42 U.S.C. § 1982.[1] Jurisdiction in the district court was based on the Fair Housing Act, 42 U.S.C. § 3612, and on 28 U.S.C. § 1343(4). The plaintiffs are TOPIC,[2] an unincorporated association, and three individual members. The district court denied the motion to dismiss, holding that plaintiffs had standing to sue under the Fair Housing Act.[3]

TOPIC is an organization of approximately one hundred families, both black and white, living in the cities of Torrance and Carson, California, and in the unincorporated portion of Los Angeles County which lies between those cities. The declared purpose of TOPIC is to combat racial discrimination and eliminate race as a factor in the marketing of housing for the geographical area where its members reside.

During 1973 TOPIC used teams of black couples and white couples posing as home seekers to investigate the business practices of real estate brokers in Torrance and Carson. Based on this investigation TOPIC concluded that the defendant real estate brokers engage in "racial steering," defined in the complaints as the practice of "directing non-white home seekers to housing in designated minority residential areas, and directing white home seekers to housing in designated white residential areas." These actions charge that such steering violates the Fair Housing Act, 42 U.S.C. § 3604(a), (b) and (d).[4] None of the plaintiffs were actual homeseekers subjected to racial steering; rather, these plaintiffs alleged that they are injured by the defendants' activities in that they are:

being deprived of the important social and professional benefits of living in an integrated community. Moreover, they have suffered and will continue to suffer embarrassment and economic damage in their social and professional activities from being stigmatized as residents of either white or black ghettoes . . . .

1. The district court properly certified the order for interlocutory appeal under 28 U.S.C. § 1292(b). On June 18, 1974, a panel of this court granted appellants' petition for interlocutory appeal.

2. The name of the organization is derived from the phrase, "to preserve an integrated community."

3. The opinion below is reported at 377 F.Supp. 111 (C.D.Cal.1974).

4. Each complaint alleged a cause of action under 42 U.S.C. § 1982. The court below correctly noted that the law of this circuit established

in *Trafficante v. Metropolitan Life Insurance Co.*, 446 F.2d 1158, 1163–64 (9th Cir. 1971) and left undisturbed by the Supreme Court's reversal on other grounds, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), required the dismissal of the counts based on § 1982, 377 F.Supp. at 115 n. 5. The order of the court, however, fails expressly to dismiss that count. From reading the court's opinion in its entirety it is clear that the language of footnote 5 was intended as a dismissal of the counts based on § 1982, and that portion of the order is hereby affirmed.

■ As a general rule, litigants do not have standing to assert the rights of third parties who may have been injured by unlawful conduct. However, a statute may accord such standing to a "private attorney general," as long as the unlawful conduct has also caused him injury-in-fact sufficient to satisfy the case or controversy requirement of article III. Here the injury alleged by TOPIC and its members is similar to that in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 208, 93 S.Ct. 364, 366, 34 L.Ed.2d 415, 418 (1972). There the Supreme Court held that the Fair Housing Act in 42 U.S.C. § 3610, conferred standing broadly enough to include tenants of a large apartment complex challenging their landlord's alleged discrimination in the rental of apartments. The Court's conclusion was based on the purpose and structure of the Act, and the expansive definition of "person aggrieved" in section 3610.

There are, however, two significant distinctions between the instant case and *Trafficante.* First, the plaintiffs here are not residents of a single apartment complex, but rather of a section of metropolitan Los Angeles with a population exceeding 100,-000. Therefore, the role played by defendants' alleged racial steering in denying the plaintiffs the benefits of living in an integrated community may be so attenuated as to negate the existence of any injury in fact. It is quite possible that, even absent the defendants' discriminatory practices, Carson and Torrance would still be segregated communities. *See Warth v. Seldin,* 422 U.S. 490, 504–08, 95 S.Ct. 2197, 2208–10, 45 L.Ed.2d 343, 358–60 (1975).

However, we need not reach this constitutional issue because of the second distinction with *Trafficante.* This action was brought under section 3612 rather than section 3610. We hold that the language of section 3612 does not authorize lawsuits to vindicate the rights of third parties. The plaintiffs therefore failed to state a claim for which relief could be granted under the jurisdictional section invoked, and the district court should have dismissed the action on that ground.

Section 3610 permits suit by "any person who claims to have been injured by a discriminatory housing practice or who believes that he will be irrevocably injured by a discriminatory housing practice that is about to occur . . . .." By contrast, section 3612 simply provides that "[t]he rights granted by [section 3604, *inter alia* ] may be enforced by civil actions" in federal or state courts.

■ The Supreme Court has recently characterized its earlier interpretation of section 3610 in *Trafficante* as giving residents of housing facilities "an actionable right to be free from the adverse consequences to them of racially discriminatory practices directed at and immediately harmful to others." *Warth v. Seldin, supra,* 422 U.S. at 513, 95 S.Ct. at 2212, 45 L.Ed.2d at 363. The narrower language of section 3612, on the other hand, precludes suit by such individuals. By permitting suit only to enforce certain enumerated rights, that section provides access to the courts only to those who are granted rights by the Act, namely, those who are the direct objects of the practices it makes unlawful.

Section 3604 grants rights not to be discriminated against in the sale or rental of housing. The plaintiffs in the instant case were already homeowners or renters; they did not make bona fide efforts to buy or rent housing. *Cf. Pegues v. Bakane,* 445 F.2d 1140, 1142 (5th Cir. 1971) (section 3612 held inapplicable because plaintiff failed to make actual offer to purchase property). Although the complaint alleges that racial steering is a practice which violates section 3604, we conclude that only the direct victims of such a practice have a cause of action under section 3612.

Our conclusion is consistent with the statutory design. Sections 3610 and 3612 provide complementary enforcement procedures under the Fair Housing Act. Section 3610 permits suit by a broad spectrum of potential plaintiffs, but requires compliance with certain preliminary procedures before redress may be sought in federal court. Persons aggrieved by discriminatory housing practices must, under section 3610, file

a complaint with the Secretary of Housing and Urban Development, who may take up to 30 days to investigate it and determine whether to resolve it administratively. The Secretary may seek to eliminate or correct the alleged discriminatory practice by informal methods of conference, conciliation and persuasion. Where state or local fair housing legislation provides rights and remedies substantially equivalent to the rights and remedies provided by federal law, the Secretary is directed to give the local authorities first opportunity to resolve the matter. In either event no suit may be brought for an additional thirty days while the conciliation process is taking place. Even then no action may be brought in federal district court if substantially equivalent remedies may be obtained under state law.

By contrast to the above, section 3612 has no pre-conditions to suit. Those entitled to bring an action under this section have immediate access to a federal forum.

This comparison demonstrates the functions served by the distinct jurisdictional grant of each section. Section 3610 contemplates the resolution of disputes in the slower, less adversary context of administrative reconciliation and mediation. While this section provides a remedy for a broad spectrum of individuals aggrieved by discrimination, the judicial system is not the initial forum for relief and thus is protected from a potential excess of litigation. Section 3612 provides preferential access to judicial processes as necessary for those individuals who are the primary victims of the illegal acts of discrimination. Such persons are likely to suffer grave and immediate harm and judicial relief may be necessary for the full vindication of their rights. See Note, *Discrimination in Employment and in Housing: Private Enforcement Provisions of the Civil Rights Acts of 1964 and 1968,* 82 Harv.L.Rev. 834, 857 (1969). Section 3614, which requires expedited procedures for cases brought under section 3612, but not those brought under section 3610, supports this conclusion.

██ To accept plaintiffs' argument that sections 3610 and 3612 extend to identical classes of plaintiffs would destroy this statutory pattern, for the procedural prerequisites of section 3610 could then be avoided in every case. The congressional purpose is illustrated by the present case. The injuries TOPIC's members may have suffered from living in segregated communities were caused by no specific single act of the defendants, but by a prolonged practice spanning many years. An injunction, if granted, would stop the practice of racial steering by the defendants, but the desired result of establishing an integrated community would not be achieved immediately. In this context, conciliation at the agency level might not only be an adequate, but a superior, remedy. Moreover, a delay in plaintiffs' access to court would not significantly worsen plaintiffs' injuries, if at all. In sharp contrast is the denial of access to one seeking to rent or purchase housing, where inability to obtain an immediate judicial remedy may constitute a serious hardship.

Finding, as we do, that section 3612 does not create a cause of action for the injury herein alleged permits us to avoid exploring the outer limits of our constitutional power under article III, a difficult and as yet not fully resolved area of the law. While such an inquiry may be unavoidable in a similar suit brought under section 3610 (and we intimate no view on the proper resolution of such case), our interpretation of section 3612 reserves this difficult constitutional question for a case where the issues have more sharply focused by, *inter alia,* prior action on the administrative level. Accordingly, we conclude that plaintiffs have failed to state a claim upon which relief could be granted under section 3612. This case is remanded to the district court for dismissal of the complaint.

REVERSED AND REMANDED.